UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF OKLAHOMA

IN RE:                               )
                                     )
JOHN WAYNE RAMER,                    )        Case No. 20-80931
                                     )        Chapter 11
                     Debtor.         )

### UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE PURSUANT TO 11 U.S.C. § 1112(b)

Ilene J. Lashinsky, United States Trustee for Region 20 (the "United States Trustee"), by and through the undersigned counsel, respectfully moves this Court for an order dismissing this chapter 11 case for cause pursuant to 11 U.S.C. §§ 1112(b) and 1129(a)(3) because the Debtor John Wayne Ramer ("Debtor") allows his land to be used to grow marijuana in violation of the federal Controlled Substances Act (the "CSA")[1] and is entitled to profits from that activity. In support of this motion, the United States Trustee respectfully states as follows:

### INTRODUCTION

The question to be answered in this case has already been succinctly stated and answered by the Tenth Circuit: "Can a debtor in the marijuana business obtain relief in the federal bankruptcy court? No."[2] District courts and bankruptcy courts within the Tenth Circuit have applied this rule in chapter 11 cases.[3] Here, the Debtor is knowingly and voluntarily allowing marijuana to be grown on his property, and he is entitled to proceeds of that illegal activity. The Debtor's violation of federal law precludes the possibility of a confirmable plan and constitutes gross mismanagement of the bankruptcy estate. Thus, cause exists to dismiss the case.

---

[1] 21 U.S.C. § 801 *et seq.*

[2] *Arenas v. United States Trustee (In re Arenas)*, 535 B.R. 845, 847 (B.A.P. 10th Cir. 2015).

[3] *See In re: Way to Grow, Inc.*, 610 B.R. 338 (D. Colo. 2019) and *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799 (Bankr. D. Colo. 2012).

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

1. On September 28, 2020, the Debtor filed a voluntary petition seeking relief pursuant to Chapter 11 of the Bankruptcy Code (Dkt. No. 1). No schedules were filed, so the next day the Court issued a Notice of Incomplete Filings that set a deadline of October 12 (Dkt. No. 4). On October 13, the Debtor filed his schedules and related documents (Dkt. No. 14).

2. According to his schedules and his testimony at the 341 meeting, the Debtor's primary assets are multiple tracts of land in Murray County: 40 acres he lives on, 165 acres that used to be a dairy farm, 165 acres that used to be a feed lot, a 2.5 acre tract occupied by a Jesse Monroe Lee, a quarter-acre containing his parents' dilapidated former residence, and a tract of 65 to 102 acres that also contains a cemetery (Dkt. No. 14 at pp. 7-10, and Debtor's 341 testimony).

3. The Debtor has many informal oral agreements to allow others to use his property without paying rent: a daughter lives in a house on one of the 165-acre tracts (and maintains the house); Jesse Monroe Lee lives on the quarter-acre; Greg Schiff lives in a travel trailer on the 40 acres; neighbors and friends use the feed lot (for which the Debtor gets manure); and his son's wholly-owned company—Green Light Farms, LLC—uses 360-380 acres of the property for a farming operation (Dkt. No. 14 at pp. 7-10, and Debtor's 341 testimony).

4. Although there is no rent, the Debtor's arrangement with Green Light Farms is for 25% of the net profits. The Debtor believes there were no net profits in 2019 but there are in 2020 and the amount will be sorted out at the end of the year (Debtor's 341 testimony). Green Light Farms uses the property to raise hogs, some cows, and grow vegetables and marijuana (Dkt. No. 14 at p. 25, and Debtor's 341 testimony).

5. The marijuana grow is conducted outdoors and indoors on a portion of the 40 acres that contains Debtor's residence. A crop was recently harvested (Debtor's 341 testimony).

## ARGUMENT AND AUTHORITY

**I.     The Debtor is Violating Federal Law Both by Allowing Marijuana to be Grown on His Property and by Profiting from it.**

Under federal law, marijuana is a controlled substance.[4] It is illegal to possess, cultivate, manufacture, or distribute.[5] It is also illegal to possess equipment used in the manufacture or sale of a controlled substance,[6] or for any person who has received income from a violation of the CSA to invest such income in anything that affects interstate commerce.[7] Importantly, it is illegal for an owner to "lease, profit from, or make available for use, with or without compensation" a place for the manufacture of a controlled substance such as marijuana.[8] And it is illegal to aid or abet anyone else committing a federal crime.[9] Thus, the Debtor here is violating federal law by allowing marijuana to be grown on his property and by profiting from it.

The fact that Oklahoma has decriminalized marijuana in certain conditions under state law is irrelevant since "the laws of the United States—laws that every United States Judge swears to uphold—proscribe and subject to criminal sanction."[10] Congress' decision on marijuana controls under the Supremacy Clause unless and until Congress changes the law.[11]

**II.     Dismissal is the Only Appropriate Remedy for Marijuana Cases in Bankruptcy.**

Courts dismiss bankruptcies involving marijuana under three overlapping theories. First, the Code allows bankruptcy courts to confirm a debtor's chapter 11 reorganization plan only if it

---

4 21 U.S.C. § 812(c)(c)(10).
5 *See, e.g.*, 21 U.S.C. §§ 841(a), 844(a).
6 21 U.S.C. § 843(a)(6) and (7).
7 21 U.S.C. § 854.
8 21 U.S.C. § 856(a)(2).
9 18 U.S.C. § 2(a).
10 *Arenas*, 535 B.R. at 854.
11 *Rent-Rite*, 484 B.R. at 804-05.

is "proposed in good faith and not by any means forbidden by law."[12] Criminal activity like involvement in marijuana production constitutes "cause" including a "lack of good faith" which disqualifies a debtor from bankruptcy relief.[13] "We agree with the bankruptcy court that while the debtors have not engaged in intrinsically evil conduct, the debtors cannot obtain bankruptcy relief because their marijuana business activities are federal crimes."[14] And no examination of a debtor's motives is necessary because lack of good faith carries an objective meaning rather than a subjective one. If debtors are unable to propose a confirmable plan because of criminal activity, it is objectively unreasonable for them to seek bankruptcy relief.[15] In chapter 11, § 1129(a)(3)'s good faith requirement "forecloses any possibility of … obtaining confirmation of a plan that relies in any part on income derived from a criminal activity."[16]

Second, the Code also forbids reorganization where the debtor is engaged in "gross mismanagement of the estate."[17] A debtor continuing criminal conduct post-petition constitutes gross mismanagement of the estate that compels a finding of cause for dismissal or conversion under § 1112(b)(1).[18] Engaging in illegal conduct exposes a debtor to criminal liability and exposes the assets to forfeiture.[19] Even if prosecution or forfeiture is not seen as likely, the fact that it could occur under current law mandates a finding of gross mismanagement.[20]

---

12 11 U.S.C. § 1129(a)(3).
13 *Arenas*, 535 B.R. at 849.
14 *Id*. at 849-50.
15 *Id*. at 852-53.
16 *Rent-Rite*, 484 B.R. at 809.
17 11 U.S.C. § 1112(b)(4)(B).
18 *Rent-Rite*, 484 B.R. at 809.
19 *Id*.
20 *Id*.

Third, the judicial branch cannot be involved in protecting illegal activity. Bankruptcy proceedings are "inherently proceedings in equity"[21] and a court of equity should not "lend its judicial power to a plaintiff who seeks to invoke that power for the purpose of consummating a transaction in clear violation of law."[22] So "a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime."[23] "[I]t is frankly inconceivable that Congress could have ever intended that federal judicial officials could, in the course of adjudicating disputes under the Bankruptcy Code, approve a reorganization plan that relies on violations of federal criminal law."[24]

Here, Debtor engaged in criminal conduct before and after filing his chapter 11 petition. He testified that he expects Green Light Farms—which cultivates, grows, and sells marijuana as a part of its operation—to have a net profit this year and make a distribution to him. Thus, any plan the Debtor could propose in this case will not be confirmable since it will involve illegal activity or the proceeds of illegal activity. The Debtor has also placed his largest assets at risk of forfeiture by this illegal activity, which is gross mismanagement of the estate. These illegal activities constitute cause for dismissal or conversion under § 1112(b). Rather than allowing the Code to be used to aid the Debtor in violating federal law, the Court should dismiss this case.

---

21 *Pepper v. Litton*, 308 U.S. 295, 304-05 (1939).
22 *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944).
23 *Rent-Rite*, 484 B.R. at 805.
24 *Way to Grow*, 610 B.R. at 346.

WHEREFORE, the United States Trustee respectfully requests this Court dismiss the above-captioned case pursuant to 11 U.S.C. §§ 1112(b) and 1129(a)(3) together with such further relief as the Court deems appropriate.

Dated: November 23, 2020

> Respectfully Submitted,
>
> ILENE J. LASHINSKY
> UNITED STATES TRUSTEE
>
> */s/ Katherine Vance*
> Katherine Vance, OBA 9175
> Paul R. Thomas, OBA 11546
> 224 South Boulder, Suite 225
> Tulsa, OK 74103
> (918) 581-6670
> (918) 581-6674 Facsimile
> Katherine.vance@usdoj.gov

## CERTIFICATE OF MAILING

The below-signed certifies that on November 23, 2020, a true and correct copy of the foregoing Motion to Dismiss was served via United States Postal Service, postage prepaid thereon, to all creditors listed on the Attached Mailing Matrix including the individual listed below:

Jerry Wayne Ramer
2371 Koller Rd.
Sulpher, OK 73086

Additionally, the Court's CM/ECF system will electronically send the Motion to all those individuals who have entered an appearance in this case.

> */s/ Katherine Vance*
> Katherine Vance, OBA 9175