# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

In re:   Jerry Wayne Ramer,           )   Case No.: 20-80931
                                      )   Chapter 11
                    Debtor.           )

## OBJECTION TO MOTION TO DISMISS

COMES NOW the Debtor, Jerry Wayne Ramer, who objects to the Motion to Dismiss filed by the United States Trustee on November 23, 2020. Debtor would show the Court that: (1) Debtor's previous acquiescence to cannabis production on his property does not give rise to dismissal under applicable law; (2) the Trustee's dismissal motion is unripe; (3) there is no risk of forfeiture, and thus, no basis to find that there is gross mismanagement of the estate; (4) that the United States Trustee lacks standing to bring this motion; and (5) that this Court can and should allow the Debtor to continue his bankruptcy case notwithstanding the Debtor's previous connection to cannabis. In support of his objection, Debtor states:

## INTRODUCTION

Since the 2012 legalization of recreational cannabis in Colorado and Oregon, the overwhelming majority of states have substantially liberalized prohibitions on the production, distribution, possession, and use of cannabis. Some states have followed the example of Colorado and Oregon and legalized cannabis for recreational use. Many have legalized cannabis in some form for medical use, sometimes limiting the concentrations of psychoactive chemicals in legal cannabis and cannabis products. At present, most states have legalized cannabis in some form. Against this backdrop, and as the Trustee rightly points out, cannabis remains illegal under the federal Controlled Substances Act. 21 U.S.C. § 801 *et seq.*

That fact, however, has not prevented the explosive growth of the cannabis industry in the United States. Indeed, federal policy has even complemented and encouraged the growth of

1

the industry.[1] At present, this multibillion dollar industry has grown such that cannabis companies are publicly traded on national stock exchanges. Cannabis production, distribution, and retail is a pervasive presence in American commerce, and its importance will only increase as new markets open and established markets mature. Accompanying this explosive growth are inevitable failed investments and business difficulties; hazards which individuals and businesses alike have sought to remedy under the protection of the bankruptcy system.

By and large, those individuals and businesses have failed to find relief in bankruptcy due to the federal prohibition against cannabis. While legal under state cannabis regimes, the federal prohibition has confronted bankruptcy courts with the difficult question of whether a debtor involved in the cannabis business can obtain relief in bankruptcy. The Trustee argues that this question, has "already been succinctly stated and answered" in the negative. But in reality, the answer to that question is the lawyer's reply: It depends.

ARGUMENT

I. *Neither* Arenas *nor the nonbinding precedent of the Tenth Circuit establish a bright line rule prohibiting bankruptcy relief to a cannabis-involved debtor.*

The principal authority cited by the Trustee is *Arenas v. U.S. Trustee.* 535 B.R. 845 (B.A.P. 10th Cir. 2015). Frank and Sarah Arenas, the debtors in that case, sought bankruptcy relief under Chapter 7 of the Bankruptcy Code. After the meeting of creditors, the United States Trustee sought dismissal, alleging that it would be impossible for a Chapter 7 Trustee to administer estate assets consisting of marijuana plants. *Id.* at 848. The Arenases then sought

---

[1] See, Andrew Sheeler, *You can buy stock in a U.S. marijuana farm. It's a first for the SEC.,* Seattle Times (Jan. 6, 2020, 9:05 PM, https://www.seattletimes.com/business/you-can-buy-stock-in-a-california-marijuana-farm-its-a-first-for-the-sec/; and Agriculture Improvement Act of 2018, Pub. L. 115-334 (legalizing hemp production under the 2018 Farm Bill).

conversion to a case under Chapter 13. *Id.* The bankruptcy court denied conversion and granted the trustee's motion to dismiss. *Id.*

The bankruptcy court denied conversion because the Arenases' conduct showed a lack of good faith. *Id. at* 852. On appeal, the appellate panel rejected the debtors' argument that the bankruptcy court "erred in adopting a per se rule that debtors who are engaged in the marijuana business are not eligible for bankruptcy relief." *Id.* Rather than adopt a per se rule, the panel explained that the bankruptcy court instead applied the good faith factors set forth in *Flygare v. Boulden* and determined that a plan was not feasible. *Id.* In reviewing the bankruptcy court's *Flygare* analysis, the panel noted the Arenases could not fund a plan from non-cannabis sources, and their income was unlikely to increase during the term of the plan. *Id.* Moreover, the panel noted that requiring a trustee to administer assets and cannabis proceeds in violation of federal law imposed an extreme burden on the trustee. *Id.* Applying these factors, the panel held that the debtors did not act in good faith and denial of conversion was appropriate.[2]

The panel therefore identified the correct analysis in a cannabis case as a good faith analysis. The panel implicitly rejected a per se rule that a debtor engaged in the cannabis business is ineligible for bankruptcy relief—though that is the position advanced by the Trustee. By its good faith analysis, *Arenas* therefore leaves open the possibility that a debtor *connected* to cannabis businesses *could* nevertheless propose a plan in good faith. Reviewing the factors salient to the *Arenas* analysis, if a debtor could propose a feasible plan that *did not* rely on cannabis assets or proceeds, this impediment to a feasible plan is removed, and with it, any assertion that the debtor lacks good faith. This leaves only the issue of the burden of plan

---

[2] *Arenas* also affirmed the dismissal of the debtor's Chapter 7 case. As the instant case concerns a Chapter 11 reorganization, much of the rationale supporting the dismissal of the Chapter 7 case, i.e. that the creditors are prejudicially delayed and windfall to the debtor, is inappropriate. Creditors in a reorganization are at least entitled to the liquidation value of estate property.

3

administration on the trustee,[3] which, if the plan does not rely on cannabis assets or proceeds, is fundamentally no different from any other non-cannabis related bankruptcy case.

The good faith analysis of *Arenas*, of course, was premised on the debtor's election to proceed under Chapter 13 of the Bankruptcy Code. But as 11 U.S.C. § 1129(a)(3) also premises plan confirmation on the good faith of the debtor, the instruction of *Arenas* is equally applicable to a case under Chapter 11. Indeed, the Colorado District Court applied the same reasoning in the Chapter 11 context: ". . . a Chapter 11 debtor cannot propose a good-faith reorganization plan that *relies* on knowingly profiting from the marijuana industry. And, in turn, inability to propose a good-faith reorganization plan is cause for dismissal under 11 U.S.C. §1112(b)(1)." *Way to Grow, Inc. v. Innis,* 610 B.R. 338, 346 (D. Colo. 2019) (emphasis added). Should a Chapter 11 debtor, though in some measure *connected* to cannabis, nonetheless propose a plan that does not rely on a violation of the Controlled Substances Act, such plan may be proposed in good faith. A plan proposed in good faith, in turn, cannot be grounds for dismissal absent other cause.

II.     *Debtor has not yet proposed a plan of reorganization*

The first of the three theories advanced by the Trustee urging dismissal concerns this issue concerning the feasibility of the Debtor's plan. As shown above, the established case law leaves open the possibility that a Debtor, though connected to the cannabis business, may nevertheless propose a plan in good faith. Debtor may yet do so in this case. But at this juncture, the Trustee assumes not only that the Debtor has proposed a plan, but she also assumes the terms contained within that plan. In particular, the Trustee assumes that the Debtor's plan requires the proceeds of an agricultural lease which, among other proceeds from other farm products, may yield proceeds from the lessee's cannabis production. But the Trustee's argument is doubly

---

[3] Or, in this case, the Debtor-in-Possession.

4

unripe. First, it assumes that the lease in question has yielded illegal proceeds, a fact which has not yet materialized. Moreover, it remains to be seen whether *any* proceeds from this lease may ever materialize. If the Debtor never receives proceeds from the lease, let alone cannabis proceeds, a dismissal on the basis of the Debtor's "necessary" use of illegal proceeds in funding a plan is a non sequitur. Second, the Trustee assumes that Debtor has filed a plan in the first place. The question of whether a plan is proposed in good faith as § 1129(a)(3) requires depends first on the existence of a plan. This case has not yet progressed to the point where a plan has been or is required to be filed. 11 U.S.C. § 1121. Until a plan has been filed, the Trustee's protest is unripe.

    III.    *Debtor has not engaged in gross mismanagement of the estate.*

The Trustee advances a second theory supporting dismissal: the Debtor's purported mismanagement of the estate. Because the Debtor engages in illegal conduct—the argument goes—the corresponding exposure of the Debtor to criminal liability and estate property to asset forfeiture mandates a dismissal. But the relevant law and the facts of this case render this argument meritless.

In reviewing a cannabis case, a Debtor's "prepetition involvement in the marijuana industry is not a per se bar to relief under the Bankruptcy Code." *In re Way to Grow*, 587 B.R. 111, 119 (Bankr. Colo. 2018) (citing *In re B Fischer Industries, LLC,* No. 16-20863-MER, (Bankr. D. Colo. Sept. 27, 2017). Thus, the "focus of this inquiry should be on debtor's marijuana-related activities during the bankruptcy case, not necessarily before the bankruptcy case is filed." *Id.* at 120. Confronted with a debtor who intends to continue involvement in the cannabis industry postpetition and throughout the pendency of the bankruptcy case, courts regularly reject that possibility. *See, e.g. In re Rent-Rite Super Kegs West Ltd.,* 484 B.R. 799, 802

5

(Bankr. Colo. 2012). But where a debtor previously connected with cannabis terminates his involvement with the illegal activity, courts consistently hold that the case may proceed despite the previous involvement in the cannabis industry. In *In re ARM Ventures, LLC,* the Chapter 11 debtor sought to propose a plan to cure a foreclosure, but this plan relied on rental income from tenants engaged in the cannabis industry. 564 B.R. 77, 81 (Bankr. S.D. Fla. 2017). Indeed, those tenants were already engaged in selling cannabis products after the filing of the debtor's bankruptcy case. *Id.* While the reliance on cannabis proceeds precluded confirmation of the debtor's plan, it did not automatically dictate dismissal: the bankruptcy court instead gave the debtor the opportunity to propose a new plan that did not rely on cannabis proceeds. *Id.* at 86-87.

The bankruptcy court in *In re Johnson* provided an alternative curative remedy. 532 B.R. 54 (Bankr. W.D. Mich. 2015). There, the debtor filed a Chapter 13 petition, but part of his income was derived from selling cannabis under the medical cannabis provisions of Michigan law. *Id.* at 55. While the Debtor's ongoing, postpetition cannabis business was incompatible with bankruptcy, the bankruptcy court nonetheless offered the debtor a choice: he could continue his medical cannabis business, or he could proceed in his bankruptcy; he could not do both. *Id.* at 58. If the debtor chose bankruptcy, the *Johnson* court made clear that the debtor would be required to cease his involvement in the cannabis business. *Id.*[4]

Presumably, the postpetition cannabis involvement by the debtors in both *ARM Ventures* and *Johnson* would have equally exposed the debtors to criminal liability and forfeiture. But this remote possibility did not preclude the bankruptcy courts in both cases from allowing the case to proceed provided that the debtors purged themselves of their involvement with cannabis. In this case, the Debtor has already indicated that he will not extend the lease with his son beyond its

---

[4] The *Johnson* court, sua sponte, also ordered the abandonment and destruction of the debtor's cannabis plants and products. *Id.* at 59.

6

expiration of December 31, 2020. Moreover, any cannabis products growing on property of the estate have been all but removed by the lessee. Having taken the steps necessary to cease cannabis production on the property of the estate, it can hardly be said that the Debtor has grossly mismanaged property of the estate. Rather, he has done exactly what courts have consistently held is required to remain a debtor in a bankruptcy case.

The Trustee's concern of forfeiture and prosecution—and therefore gross mismanagement—is firmly put to rest by other provisions of federal law. Presumably, due to the legality of medical cannabis under Oklahoma law, state authorities would not subject either the Debtor or his property to forfeiture. Only the possibility of a federal prosecution or forfeiture action remains. But this possibility has, since late 2014, been foreclosed by repeated congressional appropriations riders prohibiting the Department of Justice from expending funds to prevent state implementation of medical marijuana. Consolidated Appropriations Act, 2020, Public Law 116-93 § 531;[5] reauthorized by the Continuing Appropriations Act, 2021 and Other Extensions Act, Public Law 116-159 § 101. In construing the appropriations rider, the 9th Circuit held that this amendment prohibits a prosecution by the Justice Department:

> DOJ, without taking any legal action against the Medical Marijuana States, prevents them from implementing their laws that authorize the use, distribution, possession, or cultivation of medical marijuana by prosecuting individuals for use, distribution, possession, or cultivation of medical marijuana that is authorized by such laws. By officially permitting certain conduct, state law provides for non-prosecution of individuals who engage in such conduct. If the federal government prosecutes such individuals, it has prevented the state from giving practical effect

---

[5] "None of the funds made available under this Act to the Department of Justice may be used, with respect to any of the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming, or with respect to the District of Columbia, the Commonwealth of the Northern Mariana Islands, the United States Virgin Islands, Guam, or Puerto Rico, to prevent any of them from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana."

> to its law providing for non-prosecution of individuals who engage in the permitted conduct.
>
> We therefore conclude that, at a minimum, § 542 [Now, § 531[6]] prohibits DOJ from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws.

United States v. McIntosh, 833 F.3d 1163, 1176-77 (9th Cir. 2016). The Tenth Circuit has not yet opined on the construction of § 531, but it appears open to the Ninth Circuit's construction of the statute. *See, Sandusky v. Goetz*, 944 F.3d 1240 (10th Cir. 2019).

Whatever may be said about the potential for forfeiture and prosecution in the context of *recreational* cannabis, Congress has determined that those engaged in *medical* cannabis are protected from federal prosecution. In this case, Debtor's lessee was engaged in the legal medical cannabis industry in Oklahoma, and therefore Debtor's lessee—and by extension Debtor—are protected from federal prosecution. As the Debtor is not subject to prosecution by either state or federal authorities, the possibility of forfeiture is not just unlikely, but legally impossible. The existence of this expiring lease on Debtor's property, therefore, does not constitute gross mismanagement of the estate justifying dismissal.

Ironically, the United States Trustee has violated the law by presenting the instant motion to dismiss to the Court. As noted, Congress has prohibited the Department of Justice from interfering with state medical marijuana programs, and the United States Trustee Program is an instrumentality of the Department of Justice receiving appropriations from Congress.[7] By seeking to dismiss Debtor's bankruptcy case on the basis of medical cannabis activity by Debtor's lessee, the United States Trustee has effectively engaged in a prosecution of the Debtor

---

[6] The text of the appropriations rider has remained substantially the same since first enacted, changing only to cover additional states which have enacted medical marijuana regimes.

[7] While the Debtor notes that the United States Trustee program is funded in part by trustee fees, the program does in fact receive an appropriation from Congress.

8

and prevented the implementation of Oklahoma's medical cannabis law. Both actions are prohibited by § 534. Because of the appropriations rider, the United States Trustee lacks the authority and standing to maintain her motion to dismiss.

IV. *The judicial branch may promote compliance with federal law.*

The Trustee finally argues that the Debtor should not be able to use the authority and power of the federal courts while engaged in "illegal activity." The propositions cited by the Trustee, however, have previously been disposed of: the Debtor is not engaged in a continuing federal crime, nor does he intend to propose a reorganization plan that relies upon medical cannabis. What then, to make of the oath of every federal judge, whereby each swears to uphold the nation's laws? *See, e.g., Arenas,* 535 B.R. 845, 854. No litigant or court has has yet determined whether a bankruptcy court may better uphold the law by *promoting compliance* with the law rather than merely dismissing a cannabis case.

Given a debtor's ability and opportunity to comply with the law, a bankruptcy court best upholds the law by promoting a debtor's compliance with it. If upholding the law is a key directive of the judicial system, it would be an incongruous result where a court, under the auspices of upholding the law, dismisses a case so that the debtor (or a creditor) will engage in further violations of federal law outside of bankruptcy; this is at least the case where an alternative exists whereby that court could otherwise promote compliance with the law. Thus, the court in *Johnson* acted appropriately when, rather than dismissing the debtor's case, it instead fashioned a remedy—as equitable courts are wont to do—which promoted the Debtor's compliance with federal law by requiring the destruction of his cannabis products and plants as a condition of remaining in bankruptcy. To do otherwise would result in little more than a court's tacit acquiescence to violations of federal law, essentially telling parties that "the court

9

determines that you are breaking the law, but rather than require you to cease that activity, just go back to the status quo ex ante where you were breaking the law." That position is fundamentally incompatible with the requirement that a federal judge uphold the law—illegal activity is no less illegal just because it occurs outside a court's supervision after a case is dismissed. And courts should not act as ostriches and willfully blind themselves to the fact that dismissal will result in, or even promote, the resumption of illegal activity.

In this case, the Debtor seeks to purge himself of his prior connection with cannabis and propose a plan in compliance with federal law. This Court should give him that opportunity—an opportunity to comply.

As a practical matter, the growing ubiquity of legal cannabis across the country, and especially in Oklahoma, makes a curative instruction promoting compliance a necessity. Many individuals and businesses are now connected to an industry that Congress has determined to be illegal, and many debtors may be dismissed because their case has even the faintest whiff of cannabis. Should the employees of a law firm that provides legal counsel to a cannabis business be precluded from bankruptcy? Should Oklahoma public school teachers, whose salaries are in part funded by medical marijuana excise taxes, have all their bankruptcy cases dismissed? Should the employees of a marketing firm that sells ad space to cannabis businesses face the same result? Or should those individuals, and many others, be given the opportunity to comply? Equity should favor the latter.

## CONCLUSION

The Ninth Circuit has observed that "although debtors connected to marijuana distribution cannot expect to violate federal law in their bankruptcy case, *the presence of marijuana near the case should not cause mandatory dismissal.*" *Olson v. Van Meter,* No. NV-

17-1168-LTF, *17 (9th Cir. BAP Feb. 5, 2018) (emphasis added). The present case is precisely one where the Debtor's prior connection to cannabis should not result in dismissal. He has not yet proposed a plan, but he intends to propose a plan in good faith that does not rely on a knowing violation of federal law. His limited connection to Oklahoma's medical cannabis industry does not expose the estate to forfeiture, and he has therefore not engaged in gross mismanagement of the estate. Finally, he has sought to comply with the law by letting the medical cannabis lease expire. This Court should give him the opportunity for compliance.

The Trustee, though lacking the standing to raise the issue of medical cannabis in this case, nonetheless urges mandatory dismissal. That may be a proper remedy in a deserving case like *Arenas* or *Way to Grow*, but it is not the correct result here.

WHEREFORE, Debtor prays that the Court deny the Trustee's Motion to Dismiss and for such other relief as the Court deems proper.

> Respectfully Submitted,
>
> s/ Patrick Madden_____
> Patrick C. Madden, OBA# 33561
> Jimmy L. Veith, PC
> Attorney at Law
> P.O. Box 607
> 120 A St NW
> Ardmore, OK 73402
> Phone: (580)226-2353
> Fax: (580)226-2819
> Email: pat.veithlaw@gmail.com

**CERTIFICATE OF MAILING**

I hereby certify that on the 7th day of December, true and correct copies of the above documents were e-mailed to the persons/entities listed on the Notice of Electronic Mailing hereof, including Katherine M. Vance, Assistant US Trustee.

                <u>s/ Patrick Madden</u>
                Patrick C. Madden, OBA# 33561