UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF OKLAHOMA

IN RE:                              )
                                    )
JOHN WAYNE RAMER,                   )        Case No. 20-80931
                                    )        Chapter 11
                Debtor.             )

**UNITED STATES TRUSTEE'S REPLY BRIEF
IN FURTHER SUPPORT OF DISMISSAL UNDER 11 U.S.C. § 1112(b)**

Ilene J. Lashinsky, United States Trustee for Region 20 (the "United States Trustee"), by and through the undersigned counsel, hereby replies as follows in further support of her pending motion to dismiss this chapter 11 case for cause pursuant to 11 U.S.C. §§ 1112(b) and 1129(a)(3) because the Debtor John Wayne Ramer ("Debtor") allows his land to be used to grow marijuana in violation of the federal Controlled Substances Act (the "CSA")[1] and is entitled to profits from that activity:

**I.     The United States Trustee Has Standing to Seek Dismissal in This Case.**

Debtor contends that the United States Trustee's motion to dismiss is at odds with the Congressional appropriations rider prohibiting the U.S. Department of Justice ("the Department") actions that prevent state implementation of state laws legalizing medical marijuana. In particular, Debtor relies on *United States v. McIntosh*,[2] and further alleges that the United States Trustee's Motion to Dismiss is equal to criminal prosecution under the appropriations rider, rendering the United States Trustee without authority or standing to pursue the motion. But this misreads and misconstrues both the appropriations rider and the narrow

---

[1] 21 U.S.C. § 801 *et seq.*

[2] 833 F.3d 1163 (9th Cir. 2016)

holding of *McIntosh*, which was wholly silent on whether a bankruptcy case could be dismissed based on a debtor's continuing violations of the CSA.

In *McIntosh*, the Ninth Circuit held that the budget rider prohibited the Department from bringing criminal prosecutions of individuals for marijuana offenses in states where marijuana is legal when those individuals have complied fully with state marijuana law.[3] The court reasoned that the budget rider would be violated if the Department took actions that prevented states from "giving practical effect" to state laws legalizing marijuana and that those laws could not be given "practical effect" if persons acting in accordance with those laws faced criminal prosecution.[4]

A motion to dismiss a case or deny plan confirmation because of a debtor's ongoing violation of the CSA does not run afoul of the budget rider's prohibition for at least four reasons. First, the rider "does not provide immunity from prosecution for federal marijuana offenses" because no state law can "'legalize' possession, distribution, or manufacture of marijuana" as "state laws cannot permit what federal law prohibits" under the Supremacy Clause of the United States Constitution.[5] Thus, even if the Court were to conclude that criminal forfeiture is not an immediate risk due to *McIntosh*, cause still exists to dismiss a marijuana case based solely on the future threat of prosecution after the budget rider expires. As previously noted, the debtor has placed his assets at risk of future forfeiture through violations of the CSA.

---

[3] *McIntosh*, 833 F.3d at 1176-77. Of course, the budget rider's prohibition does not apply when the defendant's conduct was not in compliance with state law. *See, e.g., United States v. Griffith*, 928 F.3d 855, 875-76 (10th Cir. 2019) (denying defendant's request for a *McIntosh* hearing to determine whether the Department was enjoined from prosecuting him because there was undisputed evidence he was not in full compliance with Colorado law).

[4] *Id*.

[5] *Id.* at 1179 fn.5; U.S. Const. art. VI, cl. 2.

Second, state marijuana laws cannot override the Bankruptcy Code, including its various requirements for plan confirmation. In particular, the requirement that any plan be proposed by the debtor in good faith and not by any means forbidden by law cannot be met so long as the debtor's business is based on an ongoing violation of the CSA, even if the debtor is compliant with state law.

Third, unlike a criminal prosecution, dismissal of a bankruptcy petition and denial of plan confirmation is not punishment. Although there is a direct conflict between the authorization of the state marijuana laws and the prohibition of the CSA, a law that authorizes people to operate marijuana businesses is not in direct conflict with an interpretation of the Bankruptcy Code that holds that such businesses are ineligible for bankruptcy protection. Businesses that are perfectly legal can be precluded from availing themselves of bankruptcy relief.[6]

Fourth, and perhaps most fundamentally, the plain language of the appropriations rider limits the use of the Department's funds only "to prevent [certain states] from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana."[7] Nothing about a motion to dismiss a bankruptcy case, even a motion filed by the United States Trustee, prevents states from implementing state laws to legalize medical marijuana.

Recognizing the limited scope of the appropriations rider, courts have refused to apply *McIntosh* to federal actions that fall short of criminal prosecution and have otherwise limited the scope of the budget rider's prohibition. A probation order requiring a probationer to refrain from medical marijuana use has been held to not violate the budget rider.[8] Similarly, a court has

---

[6] *See* 11 U.S.C. § 109.

[7] Consolidated Appropriations Act, 2020, Public Law 116-93 § 531; reauthorized by the Continuing Appropriations Act, 2021 and Other Extensions Act, Public Law 116-159 § 101.

[8] *United States v. Nixon*, 839 F.3d 885, 888 (9th Cir. 2016); *accord United States v. Tuyakbayev*, No. 15-CR-00086-MEJ-1, 2017 U.S. Dist. LEXIS 127297 (N.D. Cal. 2017) (court may require

3

upheld an ATF regulation prohibiting marijuana users from obtaining firearms licenses.[9] The budget rider does not prohibit the government from participating in ancillary criminal forfeiture proceedings because the claimants in such proceedings did not face prosecution.[10] And a defendant's testimony at a *McIntosh* hearing would be admissible as substantive evidence or for impeachment purposes at a subsequent trial.[11] These cases establish that the scope of the budget rider's prohibition does not extend beyond the Department's criminal prosecutions of individuals in full compliance with state marijuana law for violations of the CSA. Accordingly, the United States Trustee has both the authority and standing to pursue the Motion to Dismiss here.

## II. The Court Is Not Required to Wait for Plan Confirmation to Address This Issue.

Debtor urges a wait-and-see approach, suggesting the Court hold off until a plan is proposed. But the issue is ripe now. Debtor suggests that "it remains to be seen whether *any* proceeds from this lease may ever materialize,"[12] but debtor testified at his § 341 meeting of creditors that he *would* receive proceeds this year. He testified that there was profit in 2020, he just didn't know how much. Frankly, debtor's new contrary argument that he may not receive any proceeds from the violation of the CSA does not help debtor; rather, it supports the U.S. Trustee's argument of gross mismanagement of the estate.

And to the extent the debtor's argument is that he may agree with his son that the compensation to be received is only from the vegetables and not from the marijuana, that

---

probationer to refrain from possessing or using medical marijuana, and the Department may participate in probation revocation hearings without violating budget rider).

[9] *Wilson v. Lynch*, 835 F.3d 1083, 1095 (9th Cir. 2016).

[10] *United States v. Gutierrez*, 734 Fed. Appx. 441, 448 (9th Cir. 2018).

[11] *United States v. Trevino*, 355 F. Supp. 3d 625, 626-27 (W.D. Mich. 2019).

[12] Doc. #62 at 5.

4

argument should fail. Debtor is entitled to 25% of the profits of the entire operation which is all property of the bankruptcy estate. Any suggestion to segregate the marijuana-derived income would neither cleanse the debtor of the illegality nor the Court from the taint. The very same *Johnson* chapter 13 case heavily relied upon by debtor emphasized that very point and that "[m]oney is fungible and [such an] arrangement would invariably taint the court and the Standing Trustee."[13] Debtor is presently taking full advantage of all the benefits of bankruptcy relief in the interim—this bankruptcy protected him from creditors while the marijuana finished growing and then was harvested—so he cannot simply seek to delay the consequences of his actions until it suits him.

### III. Possible Compliance at Some Future Date Is Not Objectively Reasonable.

Debtor argues that he intends to stop violating the CSA in the future, and that it is theoretically possible that his proposed plan may not *rely* on proceeds of that activity—although

---

[13] *In re Johnson*, 532 B.R. 53, 56 (Bankr. W.D. Mich. 2015). Below is additional text from the *Johnson* case, including the quote:

> First, federal judicial officers take an oath to uphold federal law, and countenancing the Debtor's continued operation of his marijuana business under the court's protection is hardly consistent with that oath. Even if the Debtor scrupulously segregates the proceeds of his criminal activity from his Social Security benefits in the future, money is fungible and the arrangement would invariably taint the court and the Standing Trustee. In other words, irrespective of any segregation of funds, the court and the Standing Trustee carrying out their respective statutory duties will inevitably support the Debtor's criminal enterprise. The automatic stay preserves the Debtor's title and possession to the Residence where he cultivates the marijuana, the horticultural equipment and fertilizers he uses to grow it, and even the truck in which he transports it. To the extent that the Debtor is "engaged in business" within the meaning of § 1304(a), which seems likely, his continued operation of the business depends upon the court's acquiescence. *See* 11 U.S.C. § 1304(b). The Debtor's financial life is inextricably bound up with his federal criminal activity through the chapter 13 plan, even if he segregates proceeds of that activity. The two aspects of the Debtor's life cannot be hermetically sealed from each other, and the pervasive benefits of bankruptcy will invariably advance both.

he doesn't address the proceeds at all. So, at some point in the future, the debtor won't be in violation of federal law while he remains in bankruptcy. But dismissal, the debtor argues, would somehow drive him back to violating the CSA. Debtor would have federal courts overlook marijuana violations, then, because requiring debtors in bankruptcy to divest themselves of their illegal activity could result in more compliance with the CSA than might occur outside bankruptcy. That argument is simply not in accord with binding precedent. "We agree with the bankruptcy court that while the debtors have not engaged in intrinsically evil conduct, the debtors cannot obtain bankruptcy relief because their marijuana business activities are federal crimes."[14] The debtor here argues that he is now—after the filing of the motion to dismiss—working toward at least partial compliance with the CSA so the Court should weigh equities, but lack of good faith carries an objective meaning rather than a subjective one: if debtors are unable to propose a confirmable plan because of criminal activity, it is objectively unreasonable for them to seek bankruptcy relief.[15]

WHEREFORE, the United States Trustee respectfully requests this Court dismiss the above-captioned case pursuant to 11 U.S.C. §§ 1112(b) and 1129(a)(3) together with such further relief as the Court deems appropriate.

Dated: January 4, 2021

                Respectfully Submitted,

                ILENE J. LASHINSKY
                UNITED STATES TRUSTEE

                */s/ Jordan Sickman*
                Jordan Sickman
                Assistant United States Trustee
                Admitted in Michigan, P69823

---

[14] *Arenas v. United States Trustee (In re Arenas)*, 535 B.R. 845, 849-50 (10th Cir. BAP 2015).
[15] *Id*. at 852-53.

Appearing under 28 U.S.C. § 515(a)  
301 North Main Street, Suite 1150  
Wichita KS 67202  
Telephone: (316) 269-6176  
Facsimile: (316) 269-6182  
Email: jordan.sickman@usdoj.gov

**CERTIFICATE OF MAILING**

      The below-signed certifies that on January 4, 2021, a true and correct copy of the foregoing Reply Brief was uploaded to the Court's CM/ECF system, which will electronically send it to all those individuals who have entered an appearance in this case.

*/s/ Jordan Sickman*